## SCOTT *vs.* McCULLOCK ET AL.

A sold to B and C a tract of land—executed a deed acknowledging payment of the purchase money. Below the deed and before the certificate of acknowledgment, there was a memorandum (purporting in the body to be the act of both, but was signed by B alone,) stating that one of the payments was still due, and that the land was bound for the payment of it. Before this deed was recorded B and C sold and conveyed the land to D. A filed a bill to subject the land to payment of the purchase money.

Held, that the memorandum at the foot of the deed was sufficient to charge D, the subsequent purchaser with notice of the lien.

### APPEAL FROM MONITEAU CIRCUIT COURT.

HAYDEN for appellant insists :

1. That the deed from appellant conveying the land to James H. and Burwell Taylor, and the memorandum thereunder, written, signed and sealed by said James H. Taylor, are parts and parcels of the same transaction, and are component parts of one entire contract, and should be construed together in determining upon the meaning and intent of the parties thereto 3rd. Bibb 11, Williams vs. Handley, 15 John, Rep. 569, Dunham vs. Deig, Pouell on mortgages p p. 6. 7, 1 Foub. Eg. chap. 6, sec. 14 p. 436. 10 Mass. Rep. 336. 13 Pick. 165, 167; 5 Pick 181, Stocking vs. Fairchild; 10 Pick. 302, Makepeace vs. Howard College; 10 Pick. 249, Sibley vs. Holden; 13 Mass. 87, Hartshorn vs. Penniman, Minot's Digest, title contract, construction of article 8, letter C. page 158 and the authorities there referred to; 4 New Hamp. Rep. 171 Emerson vs. Murray; 2d. U. S. Digest title Deed letter V. 1 Greenleaf Ev. sec. 22, 23, 24, 25, and notes thereto; 8 Mo. Rep. 51, Nicholls Adm'r of Smith vs. Douglass et al; 7 Mo. Rep. 441-2. Powell & Powell vs. Thomas.

2. That by that part of the contract which was signed and sealed by the said James H. Taylor, an express lien was created and fastened upon the land, forming the subject of the contract for the payment of the remainder of the purchase money, and in law is a mortgage upon the land. Minot's Digest title mortgage p. 487 and cases there referred to; 4 Mass.

Rep. p. 444; 2 Summers Rep. 531-2 &c. Powell on mortgage p. p. 6, 7; 7 Cranch 237, Conway's Ex'rs vs. Alexander; 1 P. Williams 270—Floyer vs. Savington—King vs. King 3 P. Will. 360.

3. That by the pretended sale of the land by the said James H. and Burwell Taylor to Ravenscroft Taylor, he took it with knowledge of the said express lien upon it, and therefore he holds it subject to the debt charged upon it. That he is estopped to deny notice of the incumbrance, because he denies title under *the very deed and contract* by which it was created and was bound in law to look into the title of his vendors at the time of his purchase; and in doing so, the only title paper which he could and must have seen, was and is the one which shows the incumbrance upon its face, and if he did not see it, or closed his eyes upon it, he is chargable with gross negligence, which does not heighten his claims to the protection of a court of equity in this controversy with Scott; 2 vol. Sugden on vendors, p. p. 322, 339, 340; 3 Howard's U. S. Rep. 410, Oliver et al vs. Siatt; Willis vs. Bucher; 4 Binney 231, 314; 2 Binney 466; Cuyler vs. Bradt; 2 Caines cases in error 326; 6 Berin 119; Campbell ads. Irvine; 2 vol. Cruise's Digest, chap. 5, secs. 62, 63. and authorities there referred to, pages 230, 231; 2 Edin. chancery Rep. 165; do page 242, 243, note (a) top paging; 2 vol. Pirtte's Digest p. 315, sec. 28; 4 Little Rep. 317, Johnson vs. Gathaway &c.; 2 Vernons Chy. Rep. 662, Draper's Company vs. Yardley; 1 Marsh. Rep. 58, Cotton vs. Hartt; 7 Monroe 559, Nantz vs. McPherson; 2 ver. Jr. 437, Taylor vs. Stihert; 1 Salkeld, 285, Ford vs. Gray; 1 Phillips Ev. 410, 411; 1 Greenleaf Ev. Title Estoppel secs. 22, 23, 24, 189, 204 and notes thereto; 6 Peter N. P. 611; 4 Peter's 1, 83, 88; Carver vs. Jackson, 7 Conn. 333; 3 Conn. 146, 150; 9 Conn. 287; 2 Brown Chy. Rep. 312 note (b); Newland on contracts 510; 6, Watts & Sergt. 472, 473.

4. That the proofs in the cause show, independent of the presumption of law, mentioned in my third point, that Ravenscroft Taylor, did see the said deed of conveyance from Scott, with the memorandum appended thereto, at the time of the execution of the conveyance to him by the said James H. Taylor—see the evidence of Judge Fulks in the bill of exceptions; and the proofs also show that the transactions between the said James H. and Burwell Taylor, with their brother Ravenscroft Taylor, were *malafide* and merely made to present, hinder and delay the complainant and others from collecting their lawful demands.

5. That the complainant, Scott, as against Ravenscroft Taylor and his legal representatives, independent of the express lien, above mentioned, has a lien *in equity* upon the land for the said purchase money, as will appear from the evidence preserved in the bill of exceptions, which shows that Ravenscroft Taylor never did pay any thing for the land, except a negro woman Lucy (the property of his mother, worth from $250 to $300, which was paid to Burwell Taylor, and which if admitted to be *an honest and bona fide transaction*) which is denied would leave in behalf of the complainant an ample security in the land for the claim he asserts against it; and therefore the court below erred in not decreeing a sale of the land and marshaling the proceeds of the sale according to the equities of the parties, if the defendants have any equity therein; 6 Monroe 198, 199, Bleights heirs vs. Banks &c.; 5 Little Rep. 62; Hunter vs. Simerall &c.; 2 Pirtle Digest 475; 4 Bibb 239; 5 Monroe 198; 1 John. Chy. 301, Frost vs. Beckman; 2 Pirtle 315, sec. 28; 1 Monroe Rep. 237, Hackwith vs. Damron &c.

RICHARDSON for appellees insists :

1. That the equitable lien of Scott for the balance of the purshase money for the land, cannot be enforced against the appellees, without proof of notice by Ravenscroft Taylor, of the non-payment of the purchase money by his grantors; 6 Monroe 198; 1 John. Chy. Rep. 300.

2. That in this case, the question of notice is a question of fact, and there is no proof that Ravenscroft Taylor had actual notice.

3. That although between Scott and James H. Taylor, the memorandum on the deed would be construed as an equitable mortgage, yet as to Ravenscroft Taylor, it would only be a declaration of James H. T., that a part of the purchase money remained unpaid, and a knowledge of that declaration must be brought to him.

Judge BIRCH delivered the opinion of the court.

On the 9th of October, 1846, the complainant sold to James H. and Burwell Taylor, certain lands in the county of Moniteau, for the sum of a thousand dollars, which he acknowledged himself to have received from them in the body of the deed, but which, by a memorandum made directly under the deed, and before the certificate of acknowledgment, it appeared, had not all been paid. That memorandum was in these words: "One of the payments constituting a part of the within consideration of this conveyance, is a bond due the first day of January, one thousand eight hundred and forty seven. We James H. Taylor, and Burwell, the persons to whom this conveyance is made, do hereby agree that it is distinctly understood by us, that the within named parcels of land conveyed, are still held and firmly bound for the faithful discharge of the aforesaid bond, due on the first day of January, 1847, which was executed and subscribed by us for the sum of three hundred dollars. Witness our hands and seals *the day and year aforesaid.*" This memorandum was signed by James H. Taylor, but not by Burwell. Shortly afterwards the two Taylor's sold the land in question to their brother, Ravenscroft Taylor, and the three hundred dollar payment, recited in the memorandum, having never been made to Scott, who has a judgment for it at law, he seeks by his bill to subject the land to its payment. The only question, therefore, which it becomes necessary to consider, is was the memorandum thus standing upon an unrecorded deed, sufficient to charge the subsequent vendee, with notice of the lien originally retained. The loose and too confiding custom of the country, whereby lands are so often sold and transferred without reference to the precedent muniment of title, has been courteously and ingeniously invoked by the counsel for the appellees, as a reason for relaxing or modifying the early and steady English rule upon the subject of notice. It has failed to convince us, however, of any thing except that reliance is too often misplaced, either in the uprightness of grantors or their ultimate ability to make good their covenants of warranty, while the reflection thus suggested, and again given to the general subject, has but the more impressed us with the propriety of standing by the original rule alluded to. It is written by Sugden in these words: "What is sufficient to put

the party upon an inquiry, is good notice, and therefore, in all cases where the purchaser cannot make out a title but by a deed which leads him to the real fact, whether by description of the parties, recital *or oth- erwise*, he will be deemed conversant thereof." Applying the rule they quoted, to the facts in the present case, it should be noted, first, that Scott never parted with his land, except as denoted by a paper which it was impossible to read without encountering a memorandum, which would at least put a subsequent purchaser upon enquiry and lead him to the real fact" (as subsequently established in the suit at law) namely, that a portion of the purchase money was unpaid. Ravenscroft Taylor, then, must be deemed, either to have had sufficient notice of the equit- able lien of the complainant or to have contented himself with the war- ranty of his brothers. If he has been mistaken in the latter, such sym- pathy as may be felt for his children, cannot be indulged at the expense of others, much less at the expense of one of the most beneficient and least erring principles of our jurisprudence. To say nothing then, of other concurring circumstances in this case, the judgment of the circuit court must be reversed, and the cause remanded for a decree in con- formity with this opinion.

Concurred in.                                           JOHN F. RYLAND.