## Richard P. Fitzhugh v. John L. Barnard and others.

*Bona fide purchaser of lands : notice of want of title.*—A person who, at the time of receiving a deed from another, knows him to have no title, or has notice of his want of title, cannot be a bona fide purchaser under the recording laws, whether the real owner of the title is known to him or not.

*Notice of what appears in chain of title.*—A grantee is chargeable with notice of whatever appears in the chain of title through which he claims.

A mortgage was given in 1832, and was foreclosed in 1835, and the premises conveyed to the mortgagees; but the deed was not recorded in the proper county. They soon after transferred the land by deed which was duly recorded. In 1856 the mortgagor made a deed of the same premises, subject to the mortgage, describing it as given "in 1830 or 1831." Held that this was sufficient notice to the grantee, not only of the mortgage, but that it was still unpaid; and after the lapse of twenty-four years, he had every

reason to believe it had been foreclosed. The grantee, therefore, could not, in good faith, claim anything in opposition to the mortgage and the rights which had accrued under it.

*Bill to quiet title: Complainant not in possession of part of the premises.*—A bill was filed to quiet complainant's title to land bounded on a river, of the whole of which he was in possession except a small portion—being a boom, embracing the bed of the stream and a foot path on the bank. His title to the whole was the same, and was undoubted. Held, that a decree quieting his title to the whole of the land was properly granted.

But held, also, that the Court could not go further, and take an account of the rents and profits of the boom while occupied by the defendants as wrong doers. Their possession was that of trespassers, for which complainant had adequate remedy at law; and not the possession of trustees, for which they might be called to account in equity.

*Heard October 22d. Decided December 5th.*

Appeal by defendants from Saginaw Circuit in Chancery. The facts necessary to an understanding of the legal questions are sufficiently stated in the opinion.

*W. L. Webber* and *G. V. N. Lothrop,* for complainant :

Newell Barnard had notice of complainant's title when he received the deed from Riggs. The legal title appeared in Fitzghugh by the Saginaw records, through the mortgage deed of Riggs to Howard and Wadhams, and the conveyance by them to Fitzhugh in 1856. Though this was a mortgage title, still it was a legal title, and gave the right to the possession. *Schwarz v. Sears, Wal. Ch.* 170; *Stevens v. Brown, Wal. Ch.* 41; *Mundy v. Monroe,* 1 *Mich.* 68. Complainant's possession was notice : 2 *Lead. Cas. in Eq.* 165. N. Barnard himself occupied as subtenant of complainant; and no tenant will be allowed to ignore his landlord's claim of title: 1 *Greenl. Ev.* § 24. The sub-lease to Barnard expressly refers to complainant's lease to Partridge, and this is notice : 2 *Lead. Cas. in Eq.* 168–9. And there is other evidence of actual knowledge. J. L. Barnard is bound by the notice to N. Barnard, who acted for him. But J. L. Barnard is clearly a man of straw: it is Newell Barnard who is the real party.

Under the evidence it is claimed that complainant was

12 MICH.—H

in possession of all the premises, including the boom. On the case as it stands, an account of the rents and profits of the boom should be decreed. It is possible that the bill was originally open to the objection of multifariousness; but that objection was not taken either by answer or demurrer, and should not be heard now: *Story Eq. Pl.* § 284, 284 *a;* 3 *How.* 333; 4 *Blackf.* 249; 9 *G. & J.* 281; 10 *G. & J.* 480; 10 *Ohio,* 456.

*Moore & Gaylord* and *C. I. Walker,* for defendants:

The bill should have been dismissed as to Newell Barnard. It is not alleged or pretended that he sets up any claim in himself in the premises. The bill cannot be sustained for the purpose of an accounting. There seems to be but one class of cases where rents and profits can be recovered by bill in equity, for a *tortious* occupation of lands; and that is, where the lands belong to an infant. The wrong doer is then considered as guardian or trustee for the infant, who is greatly favored. 1 *Story Eq.* § 511; 3 *Vern.* 723; 2 *Vern.* 342; 1 *Vern.* 295; 3 *Atk.* 262; 1 *Ves. sr.* 232; 6 *Ves.* 73. Though the objection of multifariousness is not taken at all by demurrer or answer, the Court may, *sua sponte,* dismiss the bill for this cause. But that is not the only ground of objection. The claim for the rents and profits is not one of equitable jurisdiction. It can only be prosecuted at law. The bill should also be dismissed as to Avery, Eddy and Murphy, who are only made parties for the purposes of an accounting.

Complainant has not established his title as against John L. Barnard. The simple quit claim of the land by the mortgagees, after decree of foreclosure, making no reference either to the mortgage, the debt secured thereby, or the decree, could not operate as an assignment of the mortgage, or of the decree into which it was merged. It was a mere nullity: 1 *Wash. on Real Prop.* 521,

*note ;* 5 *Fost.* 425; 2 *Cow.* 195; 1 *Ala.* 728; 1 *Ohio,* 157; *Dougherty v Randall,* 3 *Mich.* 587.

Two questions, therefore, arise: 1. Is any one of the grantees in the chain of Newell Barnard's title a purchaser for a valuable consideration? 2. If so, did he purchase without notice of complainant's title by the unrecorded deed, or of the existence of a title or lien under the mortgage?

As to the first: the evidence shows Sutherland and both the Barnards to have purchased for a valuable consideration.

As to the second: it will be claimed that the exception in the covenant against incumbrances, in the deed from Lauren P. Riggs to Jeremiah Riggs, of a mortgage given in 1830 or 1831, for $1,000, to Howard & Wadhams, is a constructive notice of the present existence of that mortgage or a title under it. But from the time of the record of that mortgage to the execution of the deed of Lauren P. Riggs, more than 22 years had elapsed, and the presumption of payment had become conclusive. 5 *Johns. Ch.* 552; 12 *Johns.* 242; *Cook v. Finkler,* 9 *Mich.* 131.

The quit-claim deed on record, from the mortgagees to the complainant, was on the records of *deeds,* not of *mortgages,* and could give no notice to an investigator of title tracing the mortgage interest. It is, too, a mere naked quit-claim, making no reference to the mortgage, and was, so far as a conveyance of the mortgage title is concerned, a mere nullity. Indeed, a title by quit-claim is of itself said to be suspicious. 33 *Miss.* 291.

The exception in the deed of Lauren P. Riggs does not recite or state the fact that there is any such existing incumbrance; it simply warrants the grantee against *any other claim* than this, leaving the title as to this without a warranty.

It certainly does not give *any* notice that this mort-

gage had ripened into a title absolute more than twenty years before. The implication is directly otherwise—that the fee was still in Lauren P. Riggs, subject to no incumbrance, unless it was to a certain mortgage, and as to *that*, it asserted nothing.

But if complainant claims the benefit of this notice, he must limit his claim to the mortgage. Of this only did it give any notice, and no record authorized any inference that it had ripened into a title. Now the record in relation to that mortgage raised the clear presumption of payment.

We insist, therefore, that there was no constructive notice of complainant's title, or of any title under that mortgage.

Actual notice of complainant's title is not established by the evidence.

To give the master's deed any force against defendants, they should have had notice of the existence of *that deed.*—2 *Lead. Cas. in Eq.* 184; 6 *Barb.* 373; 16 *Miss.* 418; 2 *Md.* 672; 1 *S. & M.* 78; 17 *Wend.* 24.

Of this there is no evidence.

The *quasi* possession under complainant was evidence merely of the *claim* of complainant; a claim which investigation showed to be without foundation.—1 *Hill. on Vendors*, 405; 2 *Sug. on Vendors*, 1052, *n.*; 2 *Lead. Cas. in Eq.* 168.

The next issue is as to the possession of the complainant. This is admitted and proved as to a portion of the lands, and denied as to the *boom*, which constituted the most important part of the premises described in the bill.

To maintain the suit, actual possession is necessary, both under and without the statute.—2 *Comp. L.* § 3490; 8 *Ohio*, 384; 13 *Ill.* 205; 17 *Ill.* 139; 3 *Halst. Ch.* 341; 4 *Cal.* 43.

The *ground* of the jurisdiction of the court of equity,

FITZHUGH *v.* BARNARD.

is, that in no other way can a person in possession *quiet his title.* And the fact of jurisdiction is confined to cases where there is no other redress.—*Stockton v, Williams, Wal. Ch.* 120, *& 1 Doug. Mich.* 546.

For this reason the bill should be dismissed.

MANNING J.:

This is a bill to remove a cloud from complainant's title. It prays a release from John L. Barnard, one of the defendants, of an alleged pretended title set up by him to the premises mentioned in the bill, and an accounting by him and the other defendants, for the rents, profits and use of a boom, situated upon and occupying a part of the premises, for the years 1860 and 1861.

We entertain no doubt as to complainant's title, and his right to a release from the defendant John L. Barnard.

The land in controversy was taken up by Henry Howard, in 1829. In July, 1831, it was conveyed by him to Lauren P. Riggs, from whom both parties claim title. On the 3d October, 1832, Riggs mortgaged the land to Henry Howard and Ralph Wadhams, for one thousand dollars. This mortgage was afterwards foreclosed by Howard and Wadhams, in the Supreme Court of the Territory of Michigan, and the mortgaged premises were sold and deed given under the decree to Howard & Wadhams, by William Draper, master in chancery, on the 18th April, 1835. The master's deed was recorded in Oakland county, instead of Saginaw county where it should have been recorded. On the 3d May, 1836, Howard & Wadhams conveyed to Fitzhugh, the complainant. Such is complainant's title from Riggs.

Now for Barnard's title. On the 9th September, 1856, twenty years after Fitzhugh had acquired his title, Lauren P. Riggs conveyed the premises to Jeremiah Riggs, with a covenant of seizin, and against incumbrances,

"except a mortgage given in 1830, or 1831, for one thousand dollars, to Howard & Wadhams." Jeremiah Riggs, on the 5th March, 1857, quit-claimed one undivided half of the premises to J. G. Sutherland, who, on the 10th April, 1860, quit-claimed to J. White, who, on the same day, quit-claimed to Barnard. On the 6th February, 1858, Jeremiah Riggs quit-claimed the other undivided half to defendant Newell Barnard, who, on the 19th March, 1858, quit-claimed to J. L. Barnard.

Had the deed from Draper, the master in chancery, to Howard & Wadhams, been recorded in Saginaw county, there could have been no question in regard to complainant's title. Has J. L. Barnard, by reason of its not having been recorded in that county, acquired a title under the registry laws superior to the title of complainant? That is the question to be answered: and the answer to it depends on the answer that may be given to another question, viz.: is he a bona fide purchaser without notice of complainant's title? If he and those through whom he claims had notice that L. P. Riggs had no title when he conveyed to Jeremiah Riggs, it is immaterial whether he or they knew the title to be in complainant or not, or whether he or they did or did not know of the existence of the master's deed to Howard & Wadhams. No one taking a deed from another knowing him to have no title, or having notice of his want of title, can be a bona fide purchaser. To take a conveyance under such circumstances, to be used against the true title, is a fraud, whether the holder of that title be known or not. If known, it is to defraud a particular individual; if unknown, whoever may hold the title.

It is a well settled principle of law, that a grantee is chargeable with notice of whatever appears in the chain of title through which he claims:—*Mason v. Payne, Walk. Ch.* 459. J. L. Barnard and his grantors are therefore chargeable with notice of the exception in the deed

from L. P. Riggs to Jeremiah Riggs, as well as with notice of the mortgage from L. P. Riggs to Howard & Wadhams, which was recorded and the record uncancelled. The deed excepts this mortgage from the covenant against incumbrances. The language of the exception is, "except ing a mortgage given in 1830 or 1831, for one thousand dollars, to Howard & Wadhams." The mortgage was given in 1832, instead of 1830 or 1831 — twenty-four years before the deed. Here was sufficient notice to have put J. L. Barnard and his grantors on inquiry. With such notice before them, they cannot, in good faith, claim anything in opposition to the mortgage and rights that have accrued under it. Had they gone to Howard & Wadhams for information, as they should have done, they would have been informed of the foreclosure, and of the purchase by them at the master's sale. The exception was not only notice of the mortgage, but that it had not been paid by the mortgagor, and, after the expiration of twenty-four years, there was every reason to believe it had been foreclosed. At the same time, the registry of deeds showed that the mortgaged premises had been conveyed by Howard & Wadhams to complainant. Nor is this all as to notice to N. Barnard, who was instrumental in getting the pretended title into the hands of his brother. On the 29th November, 1856, he took a lease for three years of the boom, which is on a part of the premises, from one Partridge, who claimed under a lease from complainant — the lease to Barnard in express terms referring to and mentioning the lease from complainant to Partridge.

Aside from notice, the evidence in the case, we think, shows that there was nothing bona fide in any of the conveyances in the chain of title from L. P. Riggs to J. L. Barnard. We can not think any one connected with the title was deceived by it, or supposed he was acquiring any thing more than the pretext of a title, which he

might sell for a greater or less price, to the real owner of the land, or to some dealer in doubtful titles.

Complainant was in actual possession of the premises at the time of filing the bill except the part used for the boom. The evidence does not, we think, show him to have been in actual possession of the boom, and it is for that reason insisted by defendants that the bill should be dismissed, not only as to that part of the premises, but also for the part of which complainant was in possession. There was no occasion, it is said, for complainant coming into a court of equity, as the question of title might have been settled in an action of ejectment for the land occupied by the boom. There is some force in the objection. But the part used for the boom is a very small part of the premises in controversy. It is the part covered by the waters of the Tittabawasse River, with a foot path on the bank — the premises in controversy being bounded by and lying on the south side of that river. Complainant was in possession of all except the bed of the stream and footpath on the bank of the river; and the title being one and the same, there would seem to be no good reason for dismissing the bill, or excepting the bed of the stream from the decree. What good would come of an action of ejectment for this part of the premises? There is no question as to complainant's title. We have already decided that point. It is no longer open to controversy; and to send the parties to law would only be attended with a bill of expense, an evil in itself. In such circumstances we think the Court was warranted in extending the relief to the premises occupied by the boom. If the position of the parties as to possession was reversed, the case might be different. The bill might be dismissed generally, or as to part only, or it might be retained with instructions to complainant, to bring ejectment for the part in possession of defendant.

. But a court of equity cannot go further, and inquire into

the rents and profits of the boom. This would involve a new inquiry. The question would no longer be one of title — almost the sole inquiry in bills of this description — but one of damages for a wrongful possession. It would be substituting a bill in equity to remove a cloud on one's title, for an ejectment and action at law for mesne profits. The wrongful possession of the boom by defendants was the possession of trespassers, for which complainant has a remedy at law, and not the possession of trustees for which they may be called to account in equity.

Newell Barnard is a brother of J. L. Barnard, and is charged in the bill with combining and confederating with others to defraud complainant; and the evidence shows him deeply implicated in the fraud attempted to be practiced on complainant.

The decree of the Circuit Court as to John L. Barnard and Newell Barnard is affirmed, so far as it relates to the release from John L. Barnard, the injunction, and costs in the Court below, and reversed as to the rents and profits of the boom. Neither party to recover costs in this Court against the other. And so much of the decree as affects the defendants Avery, Eddy and Murphy, or either of them, is reversed, and the bill as to them is dismissed, with the costs of both Courts.

CHRISTIANCY and CAMPBELL JJ. concurred.

MARTIN CH. J. was absent.