## Ludlow A. Battershall and others v. Henry Stephens.

*Written evidence: Construction.: Question for the court.*  Where a question in issue depends upon written correspondence put in evidence, the authenticity and bearing of which is undisputed, it is for the court to expound it and to instruct the jury directly and distinctly as to its legal effect upon the issue, and not to leave it to the jury to interpret and construe it.

*Registry law: Purchaser in good faith: Documentary evidence: Charge to the jury.*  The documentary evidence in this case showing distinctly that the plaintiff was not a purchaser in good faith and for a valuable consideration within the intent and meaning of the registry law, it was error for the court to lead the jury to suppose it was competent for them to find otherwise, instead of declaring to them the necessary legal effect of the unquestioned facts.

*Registry: Priority of record: Purchaser in good faith: Moral integrity.*  Whether one claiming protection under the registry law against a prior unrecorded deed is or is not a purchaser in good faith and for a valuable consideration, does not necessarily involve any question as to his integrity or the merely moral quality of his acts and conduct in obtaining the conveyance.

*Deeds: Registry: Purchase in good faith: Prior unrecorded deed.*  A purchase of one not claiming to be present owner and of what is understood not to be an assured title, but merely something that will aid in getting rid of or overcoming any rights others might hold or assert, and which is made without any idea of dealing on the footing of an actual buying. or selling of the land, is not such a purchase in good faith as will prevail over a prior unrecorded deed.

*Conveyances: Registry: Priority of record.*  A transfer of lands worth a thousand dollars for a present payment of twenty-five dollars, which was not designed as a sale of the lands, but as a trade for an indefinite amount to be ascertained afterwards and to depend upon the success of the adventure, is not such a dealing as will invest the grantee with a right which by force of the registry law is sufficient to overcome a prior unrecorded deed.

*Heard April 11.    Decided April 20.*

Error to Lapeer Circuit.

*Gaskill & Geer,* for plaintiffs in error.

*E. W. Corey* and *M. E. Crofoot,* for defendant in error.

GRAVES, J:

Stephens sued in trover for the alleged conversion of a quantity of pine saw-logs taken from the west half of northwest quarter of section thirty-five, in town nine north, of range eleven east, county of Lapeer, and recovered.

The defendants below allege error. The case turned upon the ownership of the land. It appears from the record, that Battershall, one of the plaintiffs in error, conveyed to one Albert Brett, by deed dated August 26, 1856, and recorded September 16, 1856, and that Brett reconveyed to Battershall by deed dated May 10, 1864, but which deed was not recorded until September 24, 1870. The registry of deeds, therefore, failed to disclose any conveyance by Brett between the time of registry of the deed to him from Battershall on September 16, 1856, and the registry of the deed from him to Battershall September 24, 1870, and of course it also failed to disclose during the same period any title in Battershall.

During this interval Mr. Stephens procured a quit-claim deed from Brett, dated June 4, 1869, and which he caused to be recorded on the 10th of July thereafter. It therefore became a material question on the trial whether Mr. Stephens, as grantee in this quit-claim deed from Brett, was a purchaser in good faith and for a valuable consideration, as against the prior unrecorded deed from Brett to Battershall, within the meaning of the recording laws.—§ *4231, C. L.; Shotwell v. Harrison, 22 Mich., 410.*

Mr. Stephens resided at Almont in this state, Battershall in the city of New York, and Brett in the adjacent city of Brooklyn, and Mr. Stephens desiring to negotiate about the land, addressed Brett the following letter:

"ALMONT, MICHIGAN, May 10, 1869.
"*Mr. Albert Brett, Brooklyn, New York:*

"DEAR SIR:—I have learned that you are the owner of the west half northwest quarter section thirty-five, town nine north, range eleven east, containing eighty acres, in Lapeer county, Michigan, and if so, and you wish to sell and can give me a good title, I would like to purchase. Will you, as soon as possible, advise me and oblige.

"Yours truly,
"HENRY STEPHENS."

Mr. Brett made the following reply:

"NEW YORK, May 14, 1869.
"*Henry Stephens, Almont, Mich.:*

"DEAR SIR:—Your favor of the 10th inst. is received. I did own a good many acres of land in Michigan, but several years since I gave a quit-claim deed for the most part of it, and have not paid any taxes for some five or six years. If there is any land standing in my name and a quit-claim deed would be of any service to you, if you make it out I will sign it for a moderate sum.

."Yours truly,
"ALBERT BRETT."

Shortly after the receipt of this letter Mr. Stephens wrote again and enclosed a quit-claim deed to be executed and returned, and sent with it a check for twenty-five dollars. This letter seems to have been lost after its reception by Brett, and Mr. Stephens kept no copy of it. The latter testified that his subsequent letter explained it. Mr. Brett, on receiving the letter with the deed and check, wrote as follows:

"CHICAGO, ILL., June 20, 1869.
"*Henry Stephens, Almont, Mich.:*

"DEAR SIR:—Your letter of June 4th, with check for twenty-five dollars and quit-claim deed for me to sign, came to hand at this place yesterday. I am going west on busi-

ness for my house, and they sent my letters to this place. I expect to be in Detroit on my return home, in about two weeks, and will then sign the deed before the commissioner and return it to you. I shall have some business with Alvan Wilkins, 83 Griswold St., and he can find me a commissioner. If the deed should prove an advantage to you, I shall be glad to receive any further sum that you see fit to send me. I hope it will prove a good thing for us both. I have not the least idea about my title to the property; all I know is, that I had deeds for nearly two thousand acres of land in different parts of Michigan, and paid taxes for several years, and found I was running in debt all the time. I sold and gave a quit-claim deed for the most part of them, but which of the lots of land I have no means of knowing, as I kept no record of them. As soon as I get to Detroit I will sign the deed and return it to you.

"Yours truly,

"ALBERT BRETT."

Mr. Stephens answered by the following letter, it being the one referred to in his testimony as containing explanations in regard to what he had written in the lost letter:

"ALMONT, MICH., June 22, 1869.

"*Mr. Albert Brett :*

"DEAR SIR:—Yours of 20th, from Chicago, received. You speak in such a way in your letter that if I should succeed in doing well in buying the other claimants' titles, that if we had no further understanding my purchase from you would be left in a very indefinite state. I prefer to have it all known beforehand. I bought this month from the party who owned the east half of the northwest quarter, the east half, that is, the eighty acres laying along side of the west half, which you are supposed not to have deeded. I paid one thousand dollars for it, three years, seven per cent. Yours is of equal value; the land and timber is as nearly alike as possible; also location is as good. Now, I want yours, and would be very glad to buy it and pay the same, but there are a great many liens and tax-titles upon

it, and therefore all I pay may be lost.    I may not be able to get up all these titles, and the want of one only, with a long legal contest, might make it better for me to let it alone.    Yet I may succeed in getting up the other titles for less than five hundred dollars.    Therefore I will make you this proposition: I will go on, after I have received the quit-claim from you, and perfect the title on the best terms I find possible, and after I get them all up and have a clear title I will pay you one-half of any amount, whatever it may be, that I am able to clear it up and get the titles and taxes together for, less than one thousand dollars, or half the difference between the cost of the land to me and one thousand dollars.    For instance, if it costs me five hundred dollars, the difference less than one thousand dollars is five hundred dollars; therefore I would pay you two hundred and fifty dollars, and I would get two hundred and fifty dollars for my expenses and trouble, and would make no charge for my own services, or except in case it went into litigation, then all the legal expenses would be justly part of the cost.    You have the deed I forwarded, and can in Detroit go before any notary or justice of the peace and have it acknowledged, and it is not necessary to get clerk's certificate when acknowledged in this state.    I would refer you, as to my ability to do as I agree, and as to my character for integrity, to Mr. James Moore, of John Stephens & Co., Detroit; also C. M. Davison, cashier Second National Bank, and Messrs. Buhl, Ducharme & Co., hardware dealers, Detroit.

"Very truly yours,

"HENRY STEPHENS."

The correspondence closed with the following from Mr. Brett:

"DETROIT, July 6th, 1869.

"*Henry Stephens, Esq., Almont, Mich.*:

"DEAR SIR:—Your letter of the 22d is received; it is very satisfactory; I am glad I am in so good hands, and hope your title will turn out all right.    You may send me

any sum you may think right when you get the title perfect. Enclosed please find the quit-claim deed, signed as you requested.　　　　　　　　　"Yours truly,

　　　　　　　　　　　　　　　　"ALBERT BRETT."

Mr. Stephens testified, that at the time of paying the twenty-five dollars he had no notice that Brett had conveyed the title, and at the time he obtained the deed from Brett he had no notice or knowledge that Battershall had or claimed to have any interest in the land, and that he "knew of no other titles or liens, except for taxes, save the title held by Brett."

Now the question raised under the registry law by this action depended upon the correspondence in evidence, and as there was nothing concerning its authenticity or truth or bearing to cause difficulty, it was the province and duty of the court to expound it in as far as it related to the point in question, and to instruct the jury directly and distinctly as to its legal effect upon the issue.

This was not done, however. Throughout the judge charged upon the theory that it was for the jury to examine and interpret this evidence, and that it was admissible for them to find one way or the other, according to the view they might take of it.

The first proposition of the charge was in substance, that if they should find that Stephens purchased of Brett in good faith, and took his conveyance supposing he held the original title, and paid him twenty-five dollars, relying on the fact that the registry showed the title in him, and without any knowledge or notice that Brett had deeded to Battershall, or any body else, then the unrecorded deed of the latter would be void as against that from Brett to Stephens, by force of the recording law; and later the judge told the jury they might take into consideration all the correspondence between Brett and Stephens, and the price paid for the land, in ascertaining whether Stephens was a purchaser in good faith.

Now we think it distinctly appeared from the correspond-

34 MICH.—10.

ence, that Mr. Stephens was not a purchaser in good faith and for a valuable consideration within the intent and meaning of the recording law, and that the court erred in leading the jury to suppose it was competent for them to find otherwise, and in omitting to declare the necessary legal effect of the unquestioned facts.

Whether one claiming protection under the recording laws against an unregistered deed is or is not a purchaser in good faith and for a valuable consideration, does not necessarily involve any question as to his integrity, or the merely moral quality of his acts and conduct in obtaining the conveyance; he may act with perfect uprightness as a man, and with pure motives, and still not be entitled to have his deed overreach a prior unrecorded one.

The question may turn upon other considerations altogether. There may be honest incidents having a recognized legal influence to give the transaction a determinate character, and one not answering to the legal idea denoted by the expression in the statute. For example, it is laid down in the supreme court of the United States (contrary to what our statute requires), that the bare fact that the deed set up against the unrecorded conveyance is a quit-claim is sufficient in itself to deprive the grantee in it of the character of a purchaser in good faith.—*Oliver v. Piatt, 3 How., 363; May v. LeClaire, 11 Wall., 217; Villa v. Rodriquez, 12 Wall., 323.* It has also been very often held in many courts of the highest character that in case the consideration is merely a past indebtedness, the purchaser is not entitled to be regarded as a *bonà fide* purchaser. In the present case nothing appears to impeach the honor or motives of Mr. Stephens.

His right to claim superiority over Battershall's unrecorded deed does not turn upon such considerations or on any thing implying discredit. The difficulty springs from business incidents which serve to define the transaction and fix its legal sense and efficacy, and recurring to these it is very plain, we think, that Brett did not propose to sell, and

that Stephens did not suppose he was buying the land or an assured title.    All that Brett bargained, and all that Stephens imagined he was getting was the appearance or uncertain token of a title, and which might be found useful, and perhaps a master weight in getting in, or getting rid of, or overcoming any rights others might hold or assert.    Brett did not pretend to be owner.    He made no claim.    Mr. Stephens understood this, and he frankly wrote Brett that the land,—that is the lawful title,—was worth one thousand dollars, and spoke freely of the dubious nature of his chance to secure any real title even with the aid of Brett's deed. When twenty-five dollars was talked of as the price, both understood what they were about, and that they were not dealing on the footing of an actual buying and selling of the land.    Then again, the negotiations did not conclude in a trade for twenty-five dollars.    They were kept up until Brett got Stephen's last letter.    Nothing was settled earlier. The deed was not delivered until after that time, and when the negotiations culminated it was not a sale of land for twenty-five dollars which Stephens understood to be worth one thousand dollars, but a trade for an indefinite amount to be ascertained afterwards, and to depend upon the success of the adventure.

In short, it was not an out and out purchase or trade for any fixed sum, but an enterprise of chance,—a piece of speculative traffic,— and entirely wanting in the lineaments and characteristics of a real transaction where one man assumes actually to sell and another assumes actually to buy valuable land, and the parties consider themselves dealing upon the faith that the land and title will follow the grant.

Under these circumstances, the quit-claim deed to Mr. Stephens cannot be held to have invested him with a right which by force of the registry law is sufficient to destroy the prior unrecorded deed of Battershall and annihilate the title of the latter.—*Fitzhugh v. Barnard, 12 Mich., 104; Munroe v. Eastman, 31 Mich., 283; Palmer v. Williams,*

*24 Mich., 328; Vane v. Vane, L. R. 8 Chy. App., 383; 5 Eng., 607.*

If correct in this, the judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.