TYDINGS et al. v. PITCHER et al., Appellants.

1. **Deed**: CHAIN OF TITLE: PURCHASER. A deed lying outside of a
purchaser's chain of title, imparts no notice to him.
2. **Chain of Title**: NOTICE: PURCHASER. A purchaser is bound with
constructive notice of all recorded instruments and recitals therein,
lying within his chain of title.
3. ———: VENDOR'S LIEN: NOTICE. A recital in a deed in a purchaser's
chain of title that a part of the purchase money therefor is unpaid,
is notice to him of a vendor's lien, and puts him on inquiry as to
every fact that the existence of the lien would imply or lead to.
4. ——— : ———. Such purchaser is put upon inquiry as to the fact
that the lien may have been extinguished by an unrecorded deed
reconveying the premises to the former owner.

*Appeal from Jasper Circuit Court.*—HON. JOSEPH CRAVENS,
Judge.

AFFIRMED.

*Harding & Buller* and *Phelps & Brown* for appellants.

The recital in the second deed made by Rickerson to
Tieman, dated March 6th, 1861, that a sale previously made
by him to Tieman was null and void, did not cancel the
first deed, nor was it such a recital of record as to consti-
tute notice of the unrecorded deed of Tieman to Rickerson
of November 16th, 1860. *Roberts v. Grace*, 16 Minn. 126 ;

2 Am. Lead. Cases in Eq., pp. 144, 161; *Seely v. Holland,* 1 Swan 396. A purchaser of land is only affected with notice of conveyances lying in the chain of title. 10 Mo. 34; 2 Washburn Real Prop., (2 Ed.) p. 630; *Dingman v. McCollum,* 47 Mo. 372. And if he finds a good deed to his vendor, he is not bound to look any further, much less is he bound by any deed outside of that title. 7 Watts 382; 10 Ohio 83; 1 John. Ch. 573; 14 Mass. 303; *Trull v. Bigelow,* 16 Mass. 405; *Bank v. Beveridge,* 15 Minn. 205. Pitcher being a *bona fide* purchaser at a sheriff's sale, is protected as against a prior unrecorded deed. *Draper v. Bryson,* 26 Mo. 108. The court erred in permitting plaintiff to introduce in evidence the unsealed instrument purporting to be a deed from Tieman to Rickerson. *Mastin v. Halley,* 61 Mo. 196; *Dougherty v. Mathews,* 35 Mo. 520.

*J. C. Cravens* for respondent.

The recital in the deed from Rickerson to Tieman, that $515 of the purchase money remained unpaid, was notice to Pitcher of an outstanding equity in favor of Rickerson. *Major v. Buckley,* 51 Mo. 229; *Johnson v. Gwathmey,* 4 Lit. (Ky.) 317; *Thornton v. Knox,* 6 B. Mon. 74. Notice of this equity made it incumbent as a matter of law on Pitcher to examine the records further for a release or discharge of the lien. 3 Washburn on R. P. (4 Ed.) 596; *Jackson v. Livingston,* 10 Johns. 874; *Reeder v. Barr,* 4 Ohio R. 155; *Fitzhugh v. Barnard,* 12 Mich 105; R. S., § 692. It is a settled rule of evidence, that the recitals in deeds, patents and instruments of like character, are binding on the parties and all privies whether in estate, blood or law. *Durette v. Briggs,* 47 Mo. 360; *Carver v. Jackson,* 4 Pet. 1; *Groff v. Castleman,* 5 Rand. 195; *White v. Foster,* 102 Mass. 375; *George v. Kent,* 2 Allen 16; *Carver v. Astor,* 4 Pet. 79; *Baker v. Mather,* 25 Mich. 51; *Scott v. McCullock,* 13 Mo. 13. The effect of recorded instruments as to notice is not confined to deeds or sealed instruments, but covers

" every instrument in writing that conveys any real estate or whereby any real estate may be affected in law or equity, proved and acknowledged, etc." 1 R. S., §§ 691, 692; *McClurg v. Phillips*, 57 Mo. 214. The legal title to the land being in the state till Dec., 1868, the various sales and transfers up to that time could in any event pass only an equitable estate. The purchaser of an equity is bound to take notice of a prior equity, and as between equities the prior one must prevail. 2 Story's Eq. (11 Ed.) § 1502; *Vattier v. Hinds*, 7 Pet. 252; *Boone v. Childs*, 10 Pet. 177; *Nelson v. Wishon*, 68 Mo. 387. There is no evidence that either Vernon or Shriver purchased from Pitcher for a valuable consideration and without notice. They should have averred and proved every fact necessary to make them innocent. *Harris v. Norton*, 16 Barb. 264; *Boone v. Childs*, 10 Pet. 210; *Lloyd v. Lynch*, 28 Pa. St. 419; *Duncan v. Johnson*, 13 Ark. 190.

MARTIN, C.—This was a suit in equity to divest defendants of title to a tract of land and vest the same in plaintiff, Catharine E. Tydings. It was commenced on the 24th day of April, 1877. The only point in the case, necessary to consider, involves the question of constructive notice, to purchasers of land, of outstanding titles or equities.

The land is a part of what is known as the " Swamp Land Selection," donated to the State by act of congress. The title of both sides to this controversy starts from William A. Tieman. The defendants' chain begins with a judgment in an attachment suit against Tieman in which the land was attached in favor of one Nathan Bray on the 11th of September, 1866. At the execution sale which came off on the 6th of October, 1866, the defendant, Oliver S. Pitcher, became the purchaser and received the sheriff's deed for the land. In November, 1867, Pitcher, by virtue of his title as evidenced by the sheriff's deed, obtained a deed from the county of Jasper; and in December, 1868, he acquired a patent from the State. In April, 1869, Pitcher

conveyed to Vernon, and in November, 1870, Vernon conveyed to defendant, Shriver, the present possessor of the land. Mrs. Tydings' title rests upon a deed from William A. Tieman dated November 16th, 1860, to W. C. Rickerson, her former husband. Rickerson, by deed of April, 1861, conveyed to Moses R. Harris, and on the 10th of July, 1861, Harris conveyed to the plaintiff, Mrs. Tydings. It seems that Rickerson owned the land before Tieman acquired title and on the 27th day of February, 1860, conveyed it to him by warranty deed. The deed of Tieman c·nveying the land back to Rickerson in November, 1860, seems to be without any seal, although it recites the affixing of seals. It was not recorded till June 6th, 1867. It was again recorded September 4th, 1878. Both of these recordings were subsequent to the purchase by Pitcher.

In the deed of Rickerson to Tieman of February 27, 1860, is contained the following recital: "Witnesseth that the said William C. Rickerson and Catharine his wife for and in consideration of the sum of $720 to-wit: $25 cash and other considerations, consisting of notes of this date amounting to $515, the receipt whereof is hereby acknowledged, do hereby grant bargain, sell, etc." This deed was acknowledged and recorded in April and May, 1860. On the 16th day of March, 1861, was recorded another deed from Rickerson to Tieman, dated March 6, 1861, which makes conveyance of other property therein described for a recited consideration of $1,500. In this deed occurs the following *habendum* clause, which, it is claimed, refers to the land in controversy and the unpaid purchase notes mentioned in it:

"To have and to hold upon this express condition: Whereas, the said William Ticman executed two certain promissory notes for about $300 each to William C. Rickerson, said notes are described in a deed of conveyance from said Rickerson to the said Tieman, which sale is null and void, and the notes are to be used for the payment of the within named land. The land on which the notes were

given is as follows, to-wit: the southeast quarter of the south half of section 1, township 29, range 32, containing 160 acres; also three other promissory notes dated September 25, 1860, each for $239.60, due twelve, twenty-four and thirty-six months after date. It is expressly understood that when the above described notes are paid the said Rickerson binds himself to warrant and defend the title to the land to the said Tieman," etc.

The only oral testimony submitted by defendants at the trial came from Mr. Pitcher, who, in substance, testified that when he bought the land in 1866, he was living close to it and owned a good deal of the land in the neighborhood; that he saw it advertised for sale and went to Mr. Bray, the execution plaintiff, to inquire about the title; that at he was told by him it was good and was advised by him to buy the judgment if he wanted to buy the land; that he bought the judgment, paying its full value; that he had no notice till long after the sale of any adverse claim to the land; that he examined the records before the sale and found the deed from Rickerson to Tieman of February 27, 1860, and concluded that the title was good, as he found no deed from him; that he did not see the record of the second deed between Rickerson and Tieman of March 6, 1861, until several weeks or months after the sale, when he examined the records again; that he bought the land largely upon the representations of Mr. Bray; that he was a lawyer by profession but was not practicing at that time, but commenced again within a year after that time; that he never saw the deed of March 6, 1861, revoking the prior deed until, at least, six months after he had bought the land, and that he did not care anything for the other land levied upon under the same execution as it was rocky and worthless and was bid in by him only as incidental to his other purchase. The court upon this evidence rendered its decree divesting the defendants of all title to the land, and vesting the same in plaintiff and adjudging that plaintiff have nothing by way of rents and profits but that they

should be offset with defendants' improvements. From this decree the defendants appeal.

Unquestionably a deed of conveyance, or instrument of any kind, lying outside of the chain of title, will impart no notice to a purchaser. *Crockett v. Maguire*, 10 Mo. 34; *Dingman v. McCollum*, 47 Mo. 372; *Burke v. Beveridge*, 15 Minn. 205. In accordance with this principle, the second deed of Rickerson to Tieman, made and recorded more than a year after he had parted with his title by a former recorded deed, would constitute no notice of itself or any recital in it. It may be passed here without further consideration. But it is equally true that a purchaser is bound with constructive notice of all recorded instruments in the chain of title he is buying, as well as all recitals in them. *Scott v. McCullock*, 13 Mo. 13; *Durette v. Briggs*, 47 Mo. 356.

In obedience to this principle it becomes necessary for us to consider the effect of the recital in the first deed of Rickerson to Tieman, because that deed forms a necessary link in the chain of title to the land sold at sheriff's sale, and purchased by Pitcher. The purchaser must be held to have had constructive notice of this recital, and he admits in his testimony that, prior to his purchase, he examined the records and found this deed, so that he must be regarded as having actual notice of the recital. He was informed by the recital in the deed, that the purchase money remained unpaid, as to the greater portion of it, and that the amount still due was evidenced by promissory notes. Upon these facts our law raises an implied lien, or incumbrance upon the land, which is presumed to exist in every case in the absence of a waiver of it. This lien is binding on all parties dealing with the land, after notice of the lien. A declaration in a deed of conveyance that the purchase money, or any part thereof, remains unpaid is notice of the existence of a lien for it, in the absence of language indicating a waiver or extinguishment of the lien. *Major v. Bukley*, 51 Mo. 227; *Orrick v. Durham*, 79 Mo. 179, Having actual and constructive notice of this lien, Mr. Pitcher, as pur-

chaser of the land, was put upon inquiry of every fact which the existence of the lien would imply, or naturally lead to. In the language of Commissioner Leonard of New York: " The principle of equity is well established that a purchaser of land is chargeable with notice, by implication, of every fact affecting the title, which would be discovered by an examination of the deeds or other muniment of title of his vendor, and of every fact, as to which the purchaser, *with reasonable prudence or diligence ought to become acquainted.* If there is sufficient contained in any deed or record which a prudent purchaser ought to ex-amine *to induce an inquiry in the mind of an intelligent person,* he is chargeable with knowledge or notice of the facts so contained. *Cambridge Valley Bank v. Delano,* 48 N. Y. 336.

In a case in which the effect of a reference to an old uncancelled mortgage was made in a deed, the supreme court of Michigan says: " The mortgage was given in 1832 instead of 1830 or 1831, twenty-four years before the deed. Here was sufficient notice to have put J. L. Barnard and his grantor on inquiry. With such notice before them, they cannot, in good faith, claim a: ything in opposition to the mortgage and rights that have accrued under it. Had they gone to Howard and Wadhams for information, as they should have done, they would have been informed of the foreclosure, and of the purchase by them at the master's sale." *Fitzhugh v. Barnard,* 12 Mich. 104. In *Acor v. Westcott,* 46 N. Y. 384, the judge rendering the opinion of the court remarks : " Constructive notice may be said to be a knowledge by the purchaser of some facts which should put him upon inquiry, and require him to ex-amine other matters that would generally unfold the true title." The import of the authorities generally is to the same effect. *Nute v. Nute,* 41 N. H. 60 ; *Hamilton v. Nutt,* 34 Conn. 510.

When Mr. Pitcher thought of buying the judgment and acquiring title to this land, what inquiry was suggested by the recital in the deed ? He was informed of a lien ex-

isting in favor of the vendor, amounting with interest to about $700, more than he expected to pay or did pay at the sale. This lien was, also, evidenced by promissory notes which he must have known would continue the lien for ten years at least from their date, unless sooner extinguished by payment or satisfaction of some kind. It was clearly incumbent on him, as a man of ordinary prudence, to make proper inquiry as to the continued existence of this lien. The character of the inquiry is suggested by and rises naturally from the character of the incumbrance. Under the ordinary methods of business governing transactions of this character, a release of this lien would not appear of record, so that it was perhaps unnecessary to look at the records with any well grounded expectation of finding it there. The lien was not reserved by deed nor was it created by any instrument. The most that can be said is that its existence is incidentally alluded to in a deed. The lien itself was a mere creature of equity, depending for its origin and existence upon the fact of non-payment of the purchase money. It exists and is protected in equity, independently of records and instruments recognizing or creating it. Unquestionably it was incumbent on him as a prudent man to make inquiry of the parties to this lien to ascertain what had become of it. The holder of the notes and the maker of them were indicated in the recital which informed him of the lien. The existence of the notes and the lien itself pointed to them as the proper source of information as to their payment and satisfaction. If he had made this inquiry he would, in all probability, have learned that the notes and lien had been discharged by reconveyance of the land and that they constituted the consideration of such conveyance. The unsealed and unrecorded deed which left Tieman without any beneficial interest in the land would have come to light. The possibility that if he had made inquiry of them he might have been falsely informed, or might have failed to obtain the information, could not relieve him from the ordinary dili-

gence of actually resorting to these sources of information in order to discharge the obligation of inquiry put upon him by the actual notice he had of the lien. *Williamson v. Brown*, 15 N. Y. 354.

Now, this is precisely what Mr. Pitcher according to his own testimony failed to do, and what he made no attempt to do. Neither does he offer any excuse for these omissions. The fact that he was a lawyer possessed of more than ordinary knowledge of the matters to be investigated ought not to detract from diligence imposed on him as a purchaser. For these reasons I am pursuaded that Mr. Pitcher, and those deriving title from him, are chargeable in equity with notice of the incumbrance and with the deed by which alone it was discharged from the land. While the record of the revoking deed of Ricker-son is no notice, as it stands outside of the record chain of title, yet it is competent evidence to prove the way in which the lien was discharged after the evidence has subjected the defendants to the equity of Tieman's deed, and thus made it a part of the chain of title. The amounts of the notes representing the unpaid purchase money are somewhat generally designated in the revoking deed. But the language of the deed itself indicates that they are the same notes, so that no material discrepancy is apparent.

The decree is affirmed. PHILIPS, C., concurs. EWING, C., having been of counsel, did not sit; SHERWOOD, J., absent.