HENRY S. HOWLAND

v.

PAULINE F. ANDRUS.

[Decided June 18th, 1912.]

1. Where a covenant on the part of a grantor, as to restrictions to be inserted in deeds of adjoining lots. was part of the consideration for the grantee's deed and was intended to impose a burden on all lots for the benefit of all, equity will restrain its violation, not only against the grantor-covenantor, but also against all subsequent purchasers with notice of the covenant.

2. P. L. 1903 p. 480 § 1, provides for the recording of all instruments in anywise affecting the title to any lands, tenements or hereditaments, and section 2 provides that the provisions of the Conveyance act shall apply to such instruments. Conveyance act (P. L. 1898 p. 690 § 53) provides that. as to instruments authorized to be recorded, the record shall thereafter be notice to all subsequent purchasers of the execution of the deed or instrument and its contents.—Held, that a purchaser of a lot had constructive notice of an agreement of her grantor, contained in a recorded grant of another lot in the same parcel, that no house should be built on any lot sold therein whose front was nearer than a given distance from the street on which the lots fronted.

3. One covenant in a deed restricted the grantee from locating his dwelling nearer than sixty feet to a certain street, while another bound the grantor not to convey any adjoining lots "except by a deed containing the same restrictions as above recited." A conveyance of lots located at the corner of the street, on which the first grantee's lot fronted. and another street, contained no restriction on the right of the grantee to build with respect to the first street.—Held, that the agreement with the first grantee referred to the first street, and, although the second purchaser's house faced the cross street, the side of it must be held to be the front. line intended by the covenant, so as to preclude its being built within sixty feet.

4. Though an owner of property. holding under a deed containing a restrictive building covenant. built his house with the second story overhanging a piazza which extended four feet over the building line fixed, it would. not so substantially affect the beneficial effect and operation of the covenant as to preclude such owner from enforcing it against purchasers of adjoining lots with notice of the location before their purchase.

5. And where the builder located his house as he did with the consent of his grantor. the original owner of all the property. and as a

substantial compliance with the restriction, one subsequently purchasing adjoining lots from such grantor may not treat the location as made without agreement and in the assertion of independent adverse rights under or in violation of the covenant, but is bound by the consent given.

6. An owner of property is not estopped by laches to enforce a re- strictive building covenant against an owner of adjoining property where he objected to the erection of the building as soon as its proposed loca- tion was brought to his attention, and any delay in filing a bill for an injunction was caused by a neighborly agreement that work on the building would not be commenced until the controversy over the loca- tion was settled; the conduct and statements of the builder and his agents showing that he proceeded with the work at his own risk.

---

Heard on bill, answer, replication and proofs.

This suit is brought to enforce a building line restriction in a suburban residential district of the town of Montclair. Joseph Bardsley, the owner of a tract of land lying between Park street on the east and Valley road and North View avenue on the west, about nine hundred feet in length by five hundred feet in width, laid out the land in building lots, with a street called Wildwood avenue, fifty-five feet in width through the middle of the tract from east to west. This avenue was conveyed to the town by Bardsley and his grantees by a deed dedicating it as a public street. The deed was dated June 1st, 1903, duly recorded, and referred to a map attached, which showed the lots located on both the northerly and southerly sides of the avenue. The lots, except the corner lots, fronted one hundred feet on Wildwood avenue, and most of them were about two hundred and twenty feet in depth. The entire tract had been laid out in building lots by Bardsley before the dedication, and previous thereto, one lot on the north side of Wildwood avenue had been sold to Mr. Mead in 1901, and one on the south side to Mr. Grout in 1902. Mead and Grout joined in the dedication deed. The lots in the tract were put on the market for sale as fully restricted by Mr. Bard- sley personally and through his agents, and also by a sign on the property near the Valley road. The full restrictions inserted in the Mead and Grout deeds were covenants. on the part of the grantees—*first*. that the property should be used for residential purposes only; *second*. that not more than one dwelling should

be erected on the lot; *third,* that the cost of the dwelling should not be less than $6,000 (on Mead's lot) and $8,000 (on Grout's) ; *fourth,* that the dwelling should be so located that the front line thereof shall not be nearer than sixty feet to the street measured at right angles thereto ; *fifth,* that the front line of any outbuilding erected should not be nearer the street line than the near line of the dwelling. These covenants and agreements were to run with the land and be in force for twenty-five years.

Upon the lot purchased by Grout a house had been erected by Bardsley himself previous to the purchase, the front line of which was approximately sixty feet from the street line of Wildwood avenue.

After the dedication of the avenue, and in 1905, Bardsley conveyed to one Bruggeman a lot on the north side of Wildwood avenue adjoining Mead's lot on the west, with the same covenants on the part of the grantee, except that the building cost was increased to $9,000. These lots of Grout, Mead and Bruggeman fronted only on Wildwood avenue, and upon their deeds no question could arise as to the street referred to in the restriction. Complainant was the next purchaser in March, 1906, and at that time both Mead and Bruggeman had erected on their respective lots dwellings complying with the restrictions, and complainant purchased a lot on the south side of Wildwood avenue fronting only thereon. This lot on its easterly side adjoined the corner lots at the southwest corner of Park street and Wildwood avenue and was distant from Park street about two hundred feet. The lines of Park street and the avenue form an acute angle, and on the avenue complainant's lot is about two hundred and eight feet from Park street, while at the rear it is one hundred and ninety-two feet. This fact is important, because defendant's house has been built on the corner lot parallel with Park street and not with Wildwood avenue. On the map attached to the dedication the corner lots both on the northwest and southwest corner of Park street and Wildwood avenue were laid out as fronting on Park street and abutted on the adjoining Wildwood avenue lots. Complainant, previous to his purchase of his abutting lot, had not actually seen the map, but knew, as he says, that the corner lots fronted on Park street. He first contemplated, as he says, the

purchase of the two corner lots instead of the lot abutting on them, and during negotiations on this basis was informed by Mr. Bardsley that the building to be erected on the corner lots was to be sixty feet back from Wildwood avenue. On concluding to purchase the abutting lot complainant required, as he says, some protection by a restriction on the corner lots, and Bardsley, by a letter of March 14th, 1906, stated that he had instructed the insertion of a clause in the deed "to the effect that the adjoining plots will be restricted in the same manner as yours." On March 16th, 1906, Bardsley conveyed to complainant his lot fronting one hundred feet on Wildwood avenue by a deed containing the same restrictions *ipssissimis verbis* as all the previous deeds, the building cost being $9,000. This further special covenant follows on the part of the grantor, and its precise form is important because of the correction of the original draft which is noted before execution:

"And the parties of the first part hereby agree that they will not convey any of the adjoining lots, except by a deed containing the same restrictions as above recited."

This interlineation and the erasures were noted by the attorney of the title company who received instructions to draw the deed and who witnessed the deed. Complainant, after the purchase, erected at once a dwelling, locating its front line approximately sixty feet from Wildwood avenue, and after an approval as to location by Grout, his neighbor on the west, and Bardsley, the then owner of the lots adjoining on both sides. In the following month, Grout purchased the vacant lot lying between complainant and his own lot, with the usual restrictions. Grout still owns this lot and it forms part of his residence property of two hundred feet frontage on the avenue. In September, 1907, the lot on the north side of Wildwood avenue opposite complainant's and abutting on the corner lots on the north corner of Park street and the avenue, was sold to a Mr. Ludlow, and in May, 1909, and February, 1910, lots on the north side of the avenue were sold to Vaux and Betts, with the usual restrictions. On December 17th, 1909, occurred the first sale of any of the corner lots located on Park street, when Bardsley conveyed to Mr. Hubbard the lot on the northwest corner and described as fronting one

hundred and seventeen feet on Park street and one hundred and
eighty-five feet on Wildwood avenue. In this deed the building
is restricted to dwellings, but the restriction of the building line
was "not less than fifty feet from Park street or thirty feet from
Wildwood avenue." No dwelling has been erected on the Hub-
bard corner lot. The defendant, Mrs. Andrus, on October 1st,
1910, purchased the tract on the southwest corner of Park street
and Wildwood avenue, fronting about two hundred and twenty-
six feet on Park street and two hundred and eight feet on Wild-
wood avenue. This comprised the two corner lots shown on the
map, but the description conveys as a single lot, and without any
reference to the map. The restrictions are—*first*, that no more
than two one-family private dwellings · costing not less than
$9,000 each are to be placed on the tract; *second,* the house to
face on Park street on lots having a frontage of not less than
one hundred feet; *third,* the front foundation walls of said
dwellings to be at least fifty feet from the westerly side of Park
street; *fourth,* the outbuildings to be next the southerly line of
each lot and no nearer Park street than the rear line of the
dwelling. No restriction as to distance from the Wildwood
avenue line is made. No restrictive covenants on the part of the
grantor are contained in the deed, nor was there in this deed or
in any other of the grantor's deeds except the deed to the town
of Montclair any reference to the map referred to in the town
deed. The conveyance to complainant, containing the grantor's
covenant as to restrictions to be put in the deeds for adjoining
lots, was recorded on March 19th, 1906, and as defendant's
actual notice of this covenant is denied, and has not been proved
by the complainant, the deed is relied on as constructive notice.
The husband of defendant, who acted as her agent in the pur-
chase of the lot, admits that from passing through the avenue he
knew in a general way that the Wildwood avenue houses were on
a line at a uniform distance from the avenue, but says that he
had no actual knowledge of the covenant in complainant's deed
in reference to restrictions on adjoining lots until about April
10th, 1911, after he had located defendant's house and com-
menced its construction. Defendant's house, a building about
sixty feet front by thirty feet deep, with an extension of about

seventeen feet, is located parallel with Park street and not Wild-wood avenue, and seventy-five feet distant from Park street; the north line of the house, as located, is forty feet only from Wildwood avenue on its easterly end, and thirty-six feet at the westerly end, Park street and Wildwood avenue making an acute angle.

The substantial questions in the case raised by the defence, as to the operation and effect of the restrictive covenant in the complainant's deed, are—*first,* that the covenant is purely a personal covenant of the grantor, and neither runs with defendant's land at law nor creates a burden thereon in equity; *second,* that the covenant in complainant's deed strictly construed, as it is claimed it must be, applies, so far as the corner lot is concerned, to a frontage of the house on Park street and not on Wildwood avenue. As further defences to the issuance of an injunction, if the covenant should be held to impose an equitable restriction on her lot, defendant sets up—*first,* complainant's own violation of the restriction as to the building line, by the erection of his own house nearer than sixty feet, and *second,* laches in application for the injunction.

*Mr. Borden D. Whiting,* for the complainant (*Messrs. Sommer, Colby & Whiting,* solicitors).

*Mr. Edwin B. Goodell* and *Mr. John R. Hardin,* for the defendant.

EMERY, V. C. (after statement of facts and issues).

The covenant on the part of the grantor as to the restrictions to be inserted in deeds of "adjoining lots" was part of the consideration for the complainant's deed. The restrictions upon complainant's lots were imposed by way of benefit to the adjoining lots of the grantor and for the purpose of carrying out a general plan as to lots fronting on Wildwood avenue. They were declared to run with the lands conveyed, and the covenant as to similar restrictions on the adjoining lots was intended to be of the same character as attaching a burden on the land and to run with the land, and not to be merely personal to the grantor.

And so far as purchasers with notice are concerned, the covenant is enforceable and must be considered as inserted in their deeds upon the fundamental principle that equity regards that as done which ought to be done. This principle is the general basis and origin of equitable estates and interests in lands arising out of executory contracts in relation thereto. *1 Pom. Eq. Jur. § 369.* An executory covenant restricting the use of real property, operates by way of imposing an equitable burden on the property affected, as pointed out by Chief-Justice Beasley in *Brewer* v. *Marshall (Court of Errors and Appeals, 1868), 19 N. J. Eq. (4 C. E. Gr.) 537, 544,* and by Sir George Jessell in *London & S. W. R. Co.* v. *Gomm (C. A., 1882), 20 Ch. Div. 562, 583; 3 Pom. Eq. Jur. § 1295,* and notes. Purchasers acquiring legal title to the lands subsequent to a restrictive contract made by their grantor and with notice thereof hold the lands subject to the burden. *Kirkpatrick* v. *Peshine, 24 N. J. Eq. (9 C. E. Gr.) 206; Leaver* v. *Gorman (Vice-Chancellor Stevens, 1907), 73 N. J. Eq. (3 Buch.) 129, 131.* By the act of 1903 (*P. L. 1903 p. 489 § 1*), all instruments of every kind in anywise affecting the title to lands, *or containing any agreement in relation thereto,* or granting any right or interest therein, were authorized to be recorded, and by section 2 the provisions of the Conveyance act (Revision of 1898) were extended to all such instruments. By the fifty-third section of the Conveyance act (*Rev., P. L. 1898 p. 690*), it was provided that as to instruments authorized to be recorded, the "record shall be thereafter notice to all subsequent purchasers of the execution of the deed or instrument and of its contents." By force of this statute, defendant, as purchaser of a lot in reference to which the agreement was made, had constructive notice of the agreement of her grantor, relating to the covenant to be inserted in the deed for defendant's lands. Whether the record of the agreement would have been constructive notice, if it had been contained in any deed or instrument executed by the grantor other than that of the lot adjoining defendant, it may not be necessary to determine, but, as it seems to me, defendant was bound to examine the record of the conveyances of adjoining lots, and is as much bound by agreements in reference to her lot benefiting these adjoining lots, as if the deeds for the latter had

contained grants of legal easements, or covenants legally running with the land for the benefit of the adjoining lots.

. The evidence shows, I think, that as to lots fronting, or sold as fronting, on Wildwood avenue, there was a general plan of restricted building line adopted by the grantor and enforceable against him and all claiming under him, and by one grantee of lots fronting on the avenue against any other grantee, without regard to any express covenant on the grantor's part in his deeds, but this evidence as to such general plan is not perhaps sufficient of itself to cover the corner lots as laid down on the map. But as no lots were sold by reference to the map, it was plainly within the power of the grantor to change the frontage of the corner lots, and by an express contract to make clear to an intending purchaser of an abutting lot, that the restriction as to Wildwood avenue did extend to the corner lot. And this was the object, I think, of his express covenant in complainant's deed.

Assuming that the covenant in question affects defendant's lands, it is next claimed on her behalf that the restrictive covenant properly construed would not apply to the line of her dwelling toward Wildwood avenue, but is a covenant applying to the front line of the building to be erected, which line is toward Park street. The agreement with complainant in reference to the adjoining lots was, that they should not be conveyed, "except by a deed containing the same restrictions as above recited," *i. e.,* as recited in complainant's deed. Inasmuch as complainant's lot fronted or bounded only on Wildwood avenue, this avenue must be the street referred to in complainant's deed as the street from which the distance of sixty feet was to be measured. If, therefore, the deed conveying the adjoining lots contained the same restrictions as recited in complainant's deed, they must necessarily, I think, apply at least to the line of the house measured from Wildwood avenue, and the language of the covenant, when inserted, should be such as to apply to Wildwood avenue. If the same restrictions as to distance of the front line from Wildwood avenue are to apply, then no part of this front line can be nearer than sixty feet, and this without regard to the street on which the house itself on the corner lots may front. Complainant's deed would not, as I take it, prevent his building a house on his lot

which fronted toward Park street, but no part of the line of his dwelling which "fronts" to Wildwood avenue can be nearer than sixty feet. For the purpose of the covenant the line of the dwelling "fronting" toward the street from which the measurements are to be taken, is to be considered as the "front line" intended by the covenant, although this line might be in fact the side line of the dwelling.

On the merits of the case, therefore, and so far as relates to the question whether defendant's lot is subject to the burden of the covenant restricting the distance from Wildwood avenue, the complainant's case is made out.

Defendant further claims that the complainant is disentitled to the aid of a court of equity in enforcing the covenants by injunction, or otherwise, for two reasons—*first,* because he has himself violated the covenant by the erection of his dwelling four feet within the restricted line, and *second,* because of laches in his application for relief.

As to the erection of complainant's dwelling, the facts proved are, that the dwelling fronts toward Wildwood avenue, the building being about sixty feet in width. The cellar or foundation wall of the entire front is on or back of the restricted line, but a terrace or piazza supported and enclosed by a solid wall three or four feet high extends about ten feet beyond the cellar line and is about thirty feet in length—one-half of the whole frontage of the house. This piazza or terrace is an open one, but above it the second story of the house (being at this part about thirty feet in width) extends four feet beyond the sixty-foot line, and is about four feet nearer the street line than the cellar wall. This part of the dwelling projects over the rear portion of the open piazza and is supported by four columns, which go through the piazza floor and rest on piers. The open piazza or terrace itself cannot, in my judgment, be considered as a portion of the front line of the dwelling within the restricted line, but the second story projection is within the restricted line, and as to this the real question is, whether this violation of the covenant by complainant is such as to disentitle him to any enforcement of the covenant whatever. The equitable rule applicable to the solution of the question is the general fundamental rule or maxim, that the complain-

ant must come into court with clean hands, or, as it is sometimes expressed, "He that hath committed inequity shall not have equity." In determining whether the complainant is chargeable with such inequitable conduct as to disentitle him to enforce any rights whatever under a restrictive contract, the whole situation and circumstances as to the nature, burden and object of the restrictive contract, and the extent to which the violation by the complainant affects the contract, must be considered as well as the circumstances of its violation. · The denial of the remedy or relief upon the covenant is not a conclusion which follows necessarily upon the fact of complainant's violation, but the denial of complainant's right to equitable relief for protection of his equitable right depends on the whole circumstances of the case, as affecting his own equitable status.

The violation to have this effect must, I think, be such as to affect in a substantial manner the benefit to the adjoining lots, of the covenant imposed on the complainant as part of the consideration of the grantor's deed to complainant. Considering the manifest general object of the covenant and the effect of this structure, this projection of the second story a few feet beyond the sixty-foot line does not, in my judgment, so substantially affect the beneficial effect and operation of complainant's own covenant as to disentitle complainant to its enforcement against purchasers of the adjoining lots with notice of the location before their purchase.

There is a further reason why the complainant's construction of his dwelling on these lines cannot be considered as an inequity which deprives him of any relief on his grantor's covenants.

It is proved that before locating and building his dwelling, he submitted the plans to his grantor, Mr. Bardsley, then still the owner of the adjoining lots on both sides, and that Mr. Bardsley approved and consented to them as complying with the restrictions, and the dwelling was erected after such approval. This approval was proved, it is true, by parol evidence *dehors* the deed, and no evidence of defendant's knowledge of it has been shown. But while this fact would be important as a defence if the application now were made to enforce against defendant a parol variation of the covenant in the deed of which defendant has construc-

tive notice, it is not entitled to any decisive consideration. upon the precise question now to be solved, viz., whether the complainant's location of the upper story of his dwelling a few feet within the restricted line is, on the whole circumstances of the case, such an inequity that he should be deprived of any equitable relief upon the covenants as to the adjoining lots. And in solving that question of complainant's status, the conduct of the grantor, who then owned these adjoining lots, in approving the construction as a proper location of the line under the covenant, is vital and decisive.

Defendant's contention is that this location, even if consented to by the grantor, had the effect *ipso facto* of relieving the adjoining lots from any burden of the covenants as to the restricted line, so far as they were imposed by the deed itself, and that any subsequent grantee without notice of the location by consent and with notice only of the restriction in the deed, holds the adjoining lots free from any restriction as to the distance of the dwelling from Wildwood avenue merely because a portion of the dwelling is within the line.

In my judgment, the matter of the location of the dwelling on the line in this case was somewhat analogous to the location of a boundary, and locations of dwellings not being such as apparently and substantially affect the beneficial operation of the covenants, should not, as between subsequent purchasers claiming under the parties agreeing on the location, be treated as if made without agreement and under the assertion of independent adverse rights under the covenant, or in violation of it.

Defendant's claim that this location was a violation of the covenant, putting complainant in such an inequitable position as to disentitle him to enforce the covenant in equity, is therefore fairly met, I think, on the proofs with the answer that the location was agreed on by the parties then interested, as a substantial compliance with the restriction, and with the object of substantially complying with it and securing its benefits to the adjoining lots. The objection of laches on the part of the complainant in applying for relief is not well founded, and for two reasons—*first,* there was in fact no unreasonable delay. Complainant objected to the erection of the defendant's dwelling promptly and as soon as its pro-

posed location was brought to his notice. He had immediate conferences on the subject with the defendant and his agents, and as the result of these, there was, as he says, an understanding with him that defendant would not proceed further until they came to some agreement about the building line. This understanding is not denied by defendant, and was made about the 10th of April, 1911. Work on the building was in fact stopped at intervals after this time, but, as defendant and his architect say, not permanently, but for the purposes connected with a change, not in the location, but in the plans for the structure. Complainant had no information as to this cause of the stoppage. The actual construction of the cellar walls on the line as located did not take place until about the 1st of June, and the foundations were completed about June 20th. On the 23d of June complainant communicated with Mr. Andrus by telephone, asking about the agreement, to which Mr. Andrus replied that "we decided that the agreement was not necessary, that we were well within our rights the way we were building, and the work was going ahead." Complainant, on the 28th of June, gave formal written notice of his claim through his attorneys, and on July 5th filed the bill. Application for preliminary injunction was promptly made, but was denied, and defendant at his own risk has gone on with putting up the frame of the building and enclosing it since the interview of June 23d. On these facts, it is clear, I think, that there has been no such laches as to deprive complainant of a right to apply for relief, and that the delay in filing the bill in fact occurred by reason of complainant's reliance on the conclusion of some neighborly arrangement about the location. And inasmuch as it appears from Mr. Andrus's evidence that the defendant had decided to proceed with the erection of the dwelling on the line proposed, solely on the ground that it was within their rights, and therefore declined to make any agreement, there can be no claim that defendant relied on complainant's delay, or was so injured thereby as to make it a bar to relief. The defendant, as it appears in the case, received a warranty deed from Bardsley and a guaranty of title from a title company, and on the advice of counsel determined to stand on her rights and contest complainant's claim. Relying on this claim of right, and not on any en-

couragement by complainant's laches, she proceeded with the building at her risk. This circumstance differentiates this case from the cases cited where laches was held to be a bar to an injunction.

Decree for complainant will be advised, to be settled on notice.