Nancy Atherton BISHOP, Appellant,

v.

William P. RUEFF and Patricia S. Rueff, His Wife, Appellees.

William P. RUEFF and Patricia Rueff, Cross-Appellants,

v.

Nancy Atherton BISHOP, Cross-Appellee.

Court of Appeals of Kentucky.

June 12, 1981.

Discretionary Review Denied Sept. 15, 1981.

Theodore H. Amshoff, Jr., John A. Fulton, Louisville, for appellant.

Anthony L. Warth, Robert Stallings, Hiram Ely, III, Louisville, for appellees and cross-appellants.

Before HOWARD, HOWERTON and REYNOLDS, JJ.

REYNOLDS, Judge.

Mrs. Nancy Bishop, appellant (plaintiff below), was awarded $1,801 damages in an action instituted against adjoining property owners, William and Patricia Rueff. This is an appeal and cross-appeal from the judgment.

The Rueffs had constructed a backyard patio and enclosed it with a 7-foot high "wooden slab" fence. One section of the fence was erected upon the parties' common boundary which was in near proximity to the side of the Bishop home. As a result of this improvement, appellant alleged damages resulting in changes from the waterflow across her property, as well as from the interference with her use and enjoyment of the property, and, additionally, she had sought injunctive relief to bring the fence into compliance with cited restrictive covenant.

A Mr. George Imorde initially owned a sizeable tract of property, and from a portion of the tract he established four lots, one of which he sold to Mrs. Bishop in June of 1957, and her deed contained the following restriction:

> As a further consideration for this conveyance, it is hereby agreed that the property herein conveyed shall be subject to the following restrictions:
>
> \*     \*     \*     \*     \*     \*
>
> No. 4—No solid board fence shall be erected on the property. Fencing, if any, shall be of rail, picket or shrub. Fences, other than shrub, shall not exceed four feet in height.
>
> It is further agreed that the restrictions hereinabove set out shall apply to and affect all the remaining property of the parties of the first part as was conveyed to George H. Imorde by deed of record in Deed Book 2672, Page 566, in the aforesaid Clerk's office.

Subsequent to this transaction, and before June 17, 1959, three additional lots were sold by Mr. Imorde, and with only one of those deeds (Lot 251 sold on July 3, 1957) containing notice of these restrictions. On March 29, 1962, Mr. Imorde disposed of a larger tract constituting the remainder of this property to developers David H. Wilson and Bobby J. Welsh. A subdivision containing eleven lots, being known as Trough Springs, was then developed with separate restrictions, none of which mentioned, nor did the deeds refer to, or notice, the restrictions contained in Mrs. Bishop's deed. On June 1, 1973, appellees became owners of a Trough Springs Subdivision lot which abutted the Bishop property.

Appellees were unaware of the restrictions until their backyard construction was substantially complete. This area had been graded, as well as elevated, which allowed water to flow/stand upon appellant's property.

In its instructions to the jury, the court ruled that the restrictions serving as the basis for appellant's claim for injunctive relief were inapplicable. The court reasoned that in the absence of notice in the direct chain of title, appellees were not charged with duty of notice. By the instructions, the jury was permitted to find a maximum of $2,200 for future cost of remedy, and a maximum of $450 for past costs of remedy if it determined that the appellees' improvements caused/diverted drainage water to interfere with appellant's right to the use and enjoyment of her property. Additionally, and in the event the jury determined that the fence constituted a nuisance in that it interfered with appellant's enjoyment and comfort of her property, the jury was instructed to fairly and reasonably compensate her for the resulting discomfort, not to exceed $10,000. The jury awarded damages in the sum of $901 for the interference with appellant's right to the use and enjoyment of her property as a result of the diverted drainage water; awarded her $100 for damages sustained by trespass in the construction of the fence; and $800 for the discomfort suffered by her as provided under an instruction on "nui-

sance". After the close of the case, the parties filed objections to the court's instructions. The record contains no objections made prior to this time.

Appellant argues that the deed restrictions ran with the land and were therefore binding on any subsequent purchasers of remaining portions of the original tract, and that the court's instructions were contrary to law and erroneous. On cross-appeal it is asserted that the court erred in not directing a verdict in their favor at the close of all evidence regarding the claims for water damage and nuisance.

■ Generally, the grantee is charged with notice of an encumbrance upon property created by an instrument which is of record, notwithstanding the fact that it may exist only collaterally in the chain of title. *Harp v. Parker*, 278 Ky. 78, 128 S.W.2d 211 (1939). The trial court determined that the restrictive covenant from the Bishop deed had no application to the lot subsequently acquired by appellees. The criteria for determining whether a covenant runs with the land or is merely personal between the grantor and the grantee include the intent of the parties, whether the covenant must affect or concern the land with which it runs, and whether privity of estate exists between the party claiming the benefit and the party who rests under the burden. 21 C.J.S. *Covenants* § 54. While the Bishops' deed was not in appellees' chain of title, we are aware of no rule that a restrictive covenant of this nature must meet such requirement. We believe that appellees were on constructive notice as to the restriction limiting fences, and there is some evidence of actual notice. The "chain of title" argument seems to have been disposed of by *Harp v. Parker, supra.*

■ We believe the governing principle involved is stated in *McLean v. Thurman,* Ky., 273 S.W.2d 825, 829 (1954). Where the owners of two or more lots situated near one another convey one of the lots with express restrictions applying thereto in favor of the land retained by the grantor, the

servitude becomes mutual, and during the period of restraint the owner of the lots retained may do nothing that is forbidden to the owner of the lot sold. The restriction is enforceable against the grantor, or subsequent purchaser, with notice, actual or constructive. Also, *see Anderson v. Henslee,* 226 Ky. 465, 11 S.W.2d 154 (1928).

The deed of conveyance between Imorde and appellant contains words indicating that the parties intended for the restrictive covenants to run with Imorde's remaining lands and thus be binding on subsequent purchasers. After the Bishop sale, Imorde sold three additional residential lots. One of the deeds contained the restriction. We hold that the trial court erred by denying injunctive relief.

Regarding the argument on cross-appeal that a verdict should have been directed for appellees at the close of evidence on the claim for water damage and nuisance, we find ample evidence to support a jury finding that appellees' acts created or substantially contributed to the conditions adversely affecting appellant's property. Appellees were not entitled to a directed verdict.

■ The balance of the appeal/cross-appeal alleged error for various reasons in the court's instructions to the jury. At the conclusion of evidence, the court conferred with counsel concerning instructions to be given. Only the counsel for appellant tendered instructions, and counsel for neither party filed objections before the court instructed the jury. Even though the parties were permitted to file objections to the instructions after the close of the case, only those errors properly preserved under CR 51 § 3 may be reviewed on appeal. *Kentucky Border Coal Company, Inc. v. Mullins,* Ky., 504 S.W.2d 696 (1974). Therefore, we do not undertake to review the instruction errors alleged on cross-appeal and address only the positions presented in instructions offered by appellant.

In the court's discussion with counsel regarding the instructions, and in light of the court's holding that the deed restrictions did not apply, it was agreed that the improvements upon appellee's land were permanent in nature. Appellant argues that the second instruction regarding interference with appellant's right to the use and enjoyment of her property, as a result of the diverted drainage water, should have utilized, as a measure of damages, the damage to its use, or diminution in market value, during the continuance of the nuisance or injury up to the time of trial.

■ Temporary damages were defined in *Texaco, Inc. v. Melton,* Ky., 463 S.W.2d 301 (1971), to be

that which does not prevent the damaged property from being substantially restored to its previous condition at a reasonable cost.

The record establishes, as was ably recognized by the trial court, that temporary damages resulted from an improvement of a permanent nature. Although admittedly an elusive concept, the customary measure of damages or injuries of a temporary character is an amount which will reasonably compensate the injured parties for the diminution in the value of the use and occupancy of the property. *City of Danville v. Smallwood,* Ky., 347 S.W.2d 516 (1961); *Price v. Dickson,* Ky., 317 S.W.2d 156 (1958).

■ The court properly instructed the jury that the proper measure of damages was the cost to remedy the conditions interfering with appellant's use and enjoyment of her property as a result of the diverted drainage water. The record is without competent evidence to support any measure of damages based upon diminution in market value of the property as a result of the drainage.

The court's third instruction provided for damages sustained by trespass not to exceed the sum of $900. Counsel for appellant conceded that the facts supported only nominal damages for trespass and is precluded from arguing on appeal that any limitation was erroneous.

Finally, appellant contends that the record did not support a $10,000 limit in the instructions on the nuisance award. However, an examination of the complaint and amended complaint reflects a demand for

general damages in the amount of only $10,000. The instruction was not in error.

The judgment of the trial court is reversed in part, and appellant is entitled to the enforcement of the restrictive covenant which provides:

> No solid board fence shall be erected on the property. Fencing, if any, shall be of rail, picket or shrub. Fences, other than shrub, shall not exceed four feet in height.

The judgment of the trial court, in all other respects, is affirmed.

HOWARD, J., concurs.

HOWERTON, Judge, concurring.

I would like to affirm Judge Eckert in all respects, but I must concur in the result reached by this Court. Perhaps our Supreme Court will see fit to bring the law regarding reciprocal negative easements and/or covenants running with the land into the late Twentieth Century. This case disturbs me, because we are giving effect to land restrictions which are not within a chain of title, nor are they contained in an instrument which should necessarily be checked to insure a clear title.

Three Kentucky cases which have dealt with the problem and which have helped establish the law are *Anderson v. Henslee,* 226 Ky. 465, 11 S.W.2d 154 (1928); *Harp v. Parker,* 278 Ky. 78, 128 S.W.2d 211 (1939); and *McLean v. Thurman,* Ky., 273 S.W.2d 825 (1954). Each of the cases, if limited to its facts, could be distinguished from the case at bar, but the language of the opinions expresses the law in such a way that such restrictions are enforceable, if reasonable. Constructive notice was considered to be given, because the restrictions were recorded in a deed from a common grantor, although the deed was outside the chain of title of the party to be bound by the restrictions.

In *Anderson, supra,* the deed to Henslee contained no restriction against erecting an apartment building, but the deed to Henslee's grantor did make that conveyance "subject to existing restrictions against the land conveyed." *Anderson,* 226 Ky., at 468,

11 S.W.2d 154. There were only a few deeds to be checked from the common grantor, and the phrase would have alerted Henslee to investigate what restrictions the deed referred to.

*Harp, supra,* is clearly distinguishable. The deed containing the restrictions was listed as an exception or off-conveyance in the source of title in Harp's grantor's deed. It was necessary to check the deed with the restrictions in order to know the description of the land that had been conveyed from the common grantor to determine what land remained to be conveyed by the new deed.

There was evidence of actual notice of the restrictions in *McLean, supra,* although the source of the information was an improperly-recorded contract. The contract was in the chain of title. The case was not decided on that point, however. It was decided on the basis of the constructive notice afforded by the restrictions contained in a collateral deed outside the chain of title. The *McLean* court concluded that the "chain of title" argument was settled in *Harp, supra. McLean, supra,* at 829.

Generally, the law is that reciprocal negative easements, which are enforceable against a grantor, are also enforceable against a subsequent purchaser of the common grantor's restricted remaining property, if the purchaser has notice, actual or constructive. I find no fault with that general principle, but the problem comes in what constitutes constructive notice of such off-shoot restrictions.

In attempting to "settle" the chain of title argument in *Harp,* the court adopted a passage from 2 *Tiffany on Real Property,* (2d Ed.) p. 2188. The passage concludes:

> And if, in conveying lot A the grantor enters into a restrictive agreement as to the improvement of lot B, retained by him, a subsequent purchaser of lot B would ordinarily be charged with notice of the agreement, by reason of its record as a part of the conveyance of lot A. *Harp v. Parker,* 278 Ky. 78, at 82, 128 S.W.2d 211.

Lot A is a conveyance from a common grantor with lot B, but the deed to lot A is outside the chain of title for lot B. The restrictive agreement is not in any conveyance to the common grantor.

It appears to me that the question of what is reasonable should not only apply to the nature of the restriction, but also to the manner of recording and what should constitute constructive notice. None of the three cited cases reach unreasonable results on the basis of their facts. However, to blindly apply Tiffany's principle in today's world is absurd. We are no longer dealing with a few conveyances or the examples of "blackacre" and "whiteacre."

Today, we may find a subdivision of 1,000 acres divided into 2,000 lots. If the owner of the subdivision agreed with the buyer of the twenty-fifth lot to have a reciprocal negative easement against fences on the remainder of his land, is every lot sold thereafter to be bound solely from the restriction written in the twenty-fifth deed? If so, it means that the buyer of lot number 2,000 would have to examine all 1,999 preceding deeds.

Buyers and lenders already have legitimate complaints regarding costs of title examinations, but we have heard nothing compared to what we will hear, if such useless and unreasonable burdens are mandated. It would be far more reasonable to require the buyer of lot A or 25 to require the grantor to record a separate instrument putting the restrictions squarely on the common grantor and in all chains of title from him. If the buyer of lot A or 25 desires to have the restrictions run with the land, he could require that the necessary instrument be prepared and recorded.

There will be times when a proper title examination will reveal restrictions which are nevertheless outside the chain of title. Examples of these situations would be similar to *Anderson, Harp,* and *McLean, supra.* Actual knowledge may come from any source, but constructive notice should not be applied to any situation where reciprocal negative restrictions are recorded only outside the chain of title.