Leland N. ROBERTS and Ruby May Roberts, Respondents,

v.

Julius HARMS and Hulda Harms, Appellants.

No. WD 32714.

Missouri Court of Appeals, Western District.

Jan. 26, 1982.

---

Gary W. Fleming, Sedalia, for appellants.

C. B. Fitzgerald, Warrensburg, for respondents.

Before TURNAGE, P. J., and PRITCH-ARD and CLARK, JJ.

CLARK, Judge.

In this action brought to settle a disputed land boundary, plaintiffs Leland N. and Ruby May Roberts prevailed below. Defendants Julius and Hulda Harms appeal contending evidence of a surveyor called by plaintiffs and relied on by the trial court to support its judgment was improperly received over objection that the survey did not commence at a government corner. Reversed.

Harms own the west half of a quarter/quarter section which they bought in 1948. Lots were later platted from the east half of the same quarter/quarter section and in 1961 the Roberts bought one of these lots and a portion of another. The location of the platted lots places the west line of the subdivision and the rear property line of the Roberts' lots on the half quarter/quarter section line adjoining the east line of Harms' land.

Since at least 1961, the line dividing the Harms' property from the platted subdivision was ostensibly defined by a fence of woven and barbed wire attached to hedge posts. In 1978, Harms removed that fence, erected a new one some eight feet to the east and this suit followed. The issue is whether the land between the two fences belongs to Roberts or Harms.

The Roberts' petition was styled "Petition to Quiet Title." It alleged ownership by Roberts of the real estate according to the legal description of their warranty deed and further alleged that Harms were asserting some claim to that land by their act of erecting the new fence. The relief prayed was for a declaration of Roberts' ownership.

Harms answered by setting out the legal description of their property, also acquired by warranty deed, and by denying any claim to Roberts' property, only their own. They too sought a declaration of title. No contention was made in the pleadings nor did any subsequent proof suggest that the deed descriptions overlapped or were inaccurate. The sole question was where the dividing line between the properties was located on the ground.

At trial, Roberts and Harms offered testimony from registered land surveyors each had employed. The evidence from Roberts' surveyor was to the effect that even the old fence encroached somewhat on Roberts'

land with the result that the boundary line was actually on Harms' side of the original fence. Harms' surveyor disagreed and testified that the new fence, some eight feet to the east of the old, was situated on the boundary.

Both surveyors acknowledged that the locations about which they testified had not been directly ascertained by measurement from an established or re-established government corner. Roberts' surveyor relied on corners established by the highway department and by surveyors for Whiteman Air Force Base and the Missouri Pacific Railroad. Harms' surveyor relied on the recorded plat of the subdivision. No documentation was introduced to demonstrate that any of the prior surveys or field notes on which the surveyors relied had themselves originated at an established government corner. In fact, Roberts' surveyor stated that it was impossible to find the original government corners.

■ The rule is well settled that a survey not shown to have started from a corner established by the government or, if lost, from a government corner re-established as provided by statute [1] has no probative value. *Carroz v. Kaminiski*, 467 S.W.2d 871, 872 (Mo. banc 1971); *Probst v. Probst*, 595 S.W.2d 289 (Mo.App.1979); *Moses v. Dawson*, 596 S.W.2d 741 (Mo.App.1980). Where the surveyor relies on prior data which originated from a government corner, the reliability of that data must be shown by producing and proving the data in evidence. Thus, in *Moschale v. Mock*, 591 S.W.2d 415 (Mo.App.1979), plaintiff's surveyor testified that he had tied to a corner on a survey by another surveyor. The second surveyor was called and testified that he had commenced from a government

corner in preparing his survey. This procedure, tying the ultimate product to origin at a government corner, was approved subject to the qualification that the data chain be produced and proved.

■ Neither of the surveys admitted in evidence in this case was of probative value under the rules of the cited cases. The surveyors did not start at a government corner or at any re-established point and the reliability of the work of others on which they depended was not demonstrated by showing a data chain to a government corner. The absence of accuracy is demonstrated by a disparity of some eleven feet in the location of the half quarter/quarter section line. The judgment based on that evidence must fail.[2]

Notwithstanding the deficiency in proof to establish the boundary location, the Roberts now contend that the judgment should be sustained on the alternate ground of title acquired by adverse possession. They point to evidence showing their occupancy, maintenance and cultivation of the land up to the old fence since 1961.

■ The difficulty with this case from the outset has been twofold. Plaintiffs have not settled upon what cause of action they are pursuing and doubt persists as to where the boundary line as set by legal descriptions in the deeds is located. Despite the caption of the case as a quiet title suit, the petition allegations framed no such case because each party acknowledged the title source and legal description of the other's ownership. The question has been throughout a disagreement as to where the true location of the line dividing the properties is situated. A dispute in which each owner admits the title of the other but disagrees

---

**1.** Section 60.225, RSMo Supp. 1981; Section 446.040, RSMo Supp. 1981.

**2.** In a memorandum which accompanied the judgment entry, the trial court observed: "While it is true that neither surveyor located or started from an established corner of the original United States Public Land Survey, as

this was impossible in the area, the Court determines that the survey of Tom King [plaintiffs' surveyor] should be given more weight because he started from a corner established when U.S. Highway 50 was laid out." The result adjudged was in conformity with the King survey.

as to the physical location of the boundary is not a title controversy. The appropriate action for determination of a boundary line is a suit in ejectment. *Carroz v. Kaminiski, supra.*

The content of the judgment entry which ordered Harms to remove the fence and surrender possession of the disputed tract to Roberts suggests that the trial court perceived the case as a boundary dispute. That adjudication, which also found plaintiffs to be the owners of the land between the old and new fences, depended entirely on the survey evidence and not upon evidence of hostile adverse possession. Indeed, if the plaintiffs' survey is correct, their title is by their deed of conveyance, not by adverse possession.

■ Moreover, the evidence of possession antagonistic to the claim of Harms was disputed. Harms testified that Roberts occupied the strip under agreement for its use on the condition that Roberts maintain it at Harms' sufferance. The trial court made no finding on these disputed facts for the apparent reason that it regarded the survey evidence as conclusive. The parties requested findings of fact and in the absence of such findings on disputed facts critical to an adverse possession claim, we are unwilling to speculate that the general content of the judgment imports acceptance of Roberts' evidence and rejection of Harms' testimony on a cause not pleaded. Affirmance of the judgment as one quieting title in the Roberts by adverse possession is not an available alternative.

■ Reversal of the judgment entered quite apparently does not settle the cause. Proof can certainly be adduced competent to locate the disputed boundary on the ground and, if it then appears the new fence has been accurately set, there yet remains the claim of adverse possession. Nominally, this has been a quiet title action and it may yet be prosecuted as such. In a quiet title suit, the court is required to adjudicate the respective interests of the parties even though plaintiff fails to establish his claim. *Baldwin v. Black,* 618 S.W.2d 730 (Mo.App.1981). This rule and the interests of justice require that the case be remanded to the trial court for appropriate amendment of the pleadings as the parties may consider proper and for the presentation of additional evidence necessary to permit the court to adjudicate the title dispute.

The judgment is reversed and the case is remanded for further proceedings.

All concur.